# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, <br> 11 Dupont Circle, N.W., 9th Floor <br> Washington, DC 20036-1202, <br><br> and <br><br> WILLIAM DEMPSEY, RODERICK S. BASHIR, KEVIN J. DOYLE, CHRISTOPHER BOUVIER, DAVID A. STILWELL, THOMAS LAMARTINA, EDWARD J. MANKO, JOHN J. SHERIDAN, FRANK A. MAXSON, <br> TRUSTEES OF THE SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, <br> 11 Dupont Circle, N.W., 9th Floor <br> Washington, D.C. 20036, <br><br> *Plaintiffs,* <br><br> v. <br><br> ASBURY PLAZA VENTURE LLLP <br> 750 N. Dearborn Street <br> Chicago, Illinois 60654 <br><br> Agent for Service: <br> Daniel E. Levin <br> 350 West Hubbard Street, Suite 500 <br> Chicago, IL 60654 <br><br> *Defendant.* | Case No: 16-cv-344 <br><br> **Additional Required Service under 29 U.S.C. § 1132(h) to:** <br><br> **U.S. Department of Labor** <br> **Attn: Assistant Solicitor** <br> **  for Plan Benefits Security** <br> **200 Constitution Ave., N.W.** <br> **Washington, DC 20002** <br><br> **U.S. Department of Treasury** <br> **Attn: Secretary of the Treasury** <br> **1500 Pennsylvania Avenue, NW** <br> **Washington, D.C. 20220** |

**COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, SURCHARGES, TESTING FEES, ATTORNEY'S FEES AND COSTS**

### Introduction, Jurisdiction and Venue

1. This is a civil action brought by an employee benefit plan, and by the Trustees of an employee benefit plan, pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2) and 1145 and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185(a), to collect unpaid collectively bargained contributions, Pension Protection Act surcharges, 29 U.S.C§ 1081 et. seq. (2006) ("PPA"), interest, liquidated damages, testing fees, and attorneys' fees and costs, owed by the Defendant.

2. Jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as the SEIU Pension Fund is located and administered in this District.

4. Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this complaint will be served upon the Secretary of the United States Department of Labor and the Secretary of the United States Department of Treasury by certified mail on or about the date of filing.

### Parties

5. Plaintiff Service Employees International Union National Industry Pension Fund ("SEIU Pension Fund" or "Pension Fund") is an employee pension benefit plan within the meaning of Sections 3(2), (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The SEIU

Pension Fund is and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The SEIU Pension Fund is administered at 11 Dupont Circle, N.W., 9th Floor, Washington, D.C. 20036.

6. Plaintiff Trustees of the SEIU Pension Fund, William Dempsey, Roderick S. Bashir, Kevin J. Doyle, Christopher Bouvier, David A. Stilwell, Thomas LaMartina, Edward J. Manko, John J. Sheridan, and Frank A. Maxson are the duly authorized Trustees of the SEIU Pension Fund whose duty it is to administer the SEIU Pension Fund for the benefit of the participants and beneficiaries of the SEIU Pension Fund. Plaintiff Trustees are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are authorized and empowered to maintain this action.

7. Defendant Asbury Plaza is an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), and (12), and Section 2(2), (6), and (7) of the LMRA, 29 U.S.C. §§ 152(2), (6), and (7).

8. Upon information and belief, Defendant Asbury Plaza is a limited liability limited partnership created under the laws of the State of Illinois, with a mailing address of 750 N. Dearborn Street, Chicago, Illinois, 60654.

## Factual Background

9. At all relevant times, Service Employees International Union Local 1, Residential Division ("Union") has been the exclusive bargaining representative for all bargaining unit employees, including doormen, receiving room employees, and other employees employed by Defendant at its apartment building at 750 N. Dearborn Street, Chicago, Illinois 60654.

10. At all relevant times, the Defendant was a member of the Apartment Building Owners and Managers Association of Illinois ("ABOMA"), which has been a party to a series of

collective bargaining agreements with the Union for Asbury Plaza's covered employees. ABOMA and the Union agreed to a collective bargaining agreement with an initial term of December 1, 2009 through November 30, 2012 ("2009 CBA"). A true, correct and complete copy of the 2009 CBA is attached as Plaintiffs' Exhibit 1. The terms of the 2009 CBA were extended to May 29, 2013 through a series of extension agreements signed December 5, 2013 and February 28, 2013. True, correct and complete copies of the relevant extensions are attached as Plaintiffs' Exhibit 2. Subsequently, ABOMA and the Union agreed to a new collective bargaining agreement for the period from May 30, 2013 to November 30, 2013 ("Interim CBA"). A true, correct and complete copy of the Interim CBA is attached as Plaintiffs' Exhibit 3. Next, ABOMA and the Union agreed to a collective bargaining agreement for the period from December 1, 2013 through November 30, 2016 ("2013 CBA"). A true, correct and complete copy of the 2013 CBA is attached as Plaintiffs' Exhibit 4.

11. Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, employers who are obligated to make contributions to a multi-employer employee benefit plan must do so in accordance with the terms of the applicable collective bargaining agreement. Articles IV, Section 1(a) of the 2009, Interim, and 2013 CBAs state that the Defendant is obligated to remit contributions to the SEIU Pension Fund for all covered employees at the rate of sixty-five cents ($0.65) per hour. Ex. 1, Article IV, Section 1(a) at 7; Ex. 3, Article IV, Section 1(a) at 7; Ex. 4, Article IV, Section 1(a) at 8.

12. Pursuant to Articles IV, Section 4 of the 2009 and Interim CBAs and Article IV, Section 5 of the 2013 CBA and by submitting reports and contributions, Defendant agreed to be bound by the SEIU Pension Fund's Agreement and Declaration of Trust ("Trust Agreement"). Article IV, Section 4 of the 2009 CBA and Article IV, Section 5 of the 2013 CBA each provide

that "The Employer adopts the provisions of and agrees to comply with and be bound by the Trust Agreement establishing said Pension Fund and the National Industry Pension Fund and all amendments thereto… and further ratifies and approves all matters heretofore done in connection with the creation and administration of said Trusts and all actions to be taken by such Trustees within the scope of their authority…" Ex. 1, Article IV, Section 4 at 8; Ex. 3, Article IV, Section 4 at 8; Ex. 4, Article IV, Section 5 at 9.

13. A true, correct, and complete copy of the Trust Agreement is attached as Plaintiffs' Exhibit 5. Pursuant to Section 3.1 of the Trust Agreement, the Trustees are empowered to create and enforce a collection policy for the assessment of unpaid and delinquent contributions. See Ex. 5, Section 3.1. Accordingly, Defendant is obligated to remit contributions to the SEIU Pension Fund in accordance with the collection policies adopted by the Trustees. A true, correct, and complete copy of the Statement of Policy for Collection of Delinquent Contributions ("Collection Policy") adopted by the Trustees is attached as Plaintiffs' Exhibit 6.

14. Section 3.1 of the Trust Agreement provides that an employer must submit complete remittance reports to the SEIU Pension Fund with the employer's contributions. The remittance report must contain the names of each covered employee and the number of compensable hours for each employee during the reporting month. Ex. 5, Section 3.1.

15. Section 3.2 of the Trust Agreement and Section 5 of the Collection Policy provide that an employer delinquent in its contribution obligations to the SEIU Pension Fund and the subject of a collection lawsuit is liable for interest at the rate of ten percent (10%) per annum, liquidated damages at the greater of the interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions, and attorneys' fees and costs. Ex. 2, Section 3.2; Ex. 4, Section 5.

16.     Section 4 of SEIU Pension Fund's Trust Agreement and Section 5 of the Collections Policy both provide that the SEIU Pension Fund may audit any contributing employer for the purpose of ensuring that such employer has remitted the appropriate amount of contributions to the SEIU Pension Fund. Ex. 5, Section 4; Ex. 6, Section 5. The purpose of a payroll audit is to verify that an employer's monthly self-reporting of employee hours is consistent with the employer's payroll records and state and federal tax filings.

17.     Pursuant to the PPA, the SEIU Pension Fund was determined to be in critical status for the plan years beginning January 1, 2009, January 1, 2010, January 1, 2011, January 1, 2012, January 1, 2013, January 1, 2014, and January 1, 2015. Participating employers in the Fund were notified of this status via letters sent April 30, 2009, April 30, 2010, April 30, 2011, April 30, 2012, April 30, 2013, April 30, 2014, and April 30, 2015. Copies of these letters are attached as Plaintiffs' Exhibit 7.

18.     For plans in critical status, the PPA requires that all contributing employers pay to the plan a surcharge to help correct its financial situation. The amount of the surcharge is equal to a percentage of the amount an employer is otherwise required to contribute to the plan. For the SEIU Pension Fund, a five percent (5%) surcharge was applicable in the initial critical year (2009), and a ten percent (10%) surcharge was applicable in 2010 and for each succeeding plan year thereafter in which the plan is in critical status, until the bargaining parties agree to a collective bargaining agreement that implements the supplemental contribution schedules in the Rehabilitation Plan adopted by the SEIU Pension Fund or the Default Schedule is imposed on the participating employer. Participating employers were notified of the Rehabilitation Plan adopted by the SEIU Pension Fund in November 2009. A copy of this letter is attached as Plaintiffs' ~~Exhibit 7~~Exhibit 8.

19. Defendant is obligated to remit surcharges pursuant to the Fund's Rehabilitation Plan. Specifically, for the relevant time periods of this Complaint, Defendant was obligated to remit surcharges in the amount of an additional 5% of underlying contributions as of June 1, 2009 and an additional 10% of underlying contributions from January 1, 2010 to January 31, 2013. Pursuant to Section 305(e)(7)(B) of ERISA, any failure to make a required surcharge shall be treated as a delinquent contribution under Section 515 of ERISA.  29 U.S.C. § 1085(e)(7)(B).

20. The Pension Fund conducted a payroll audit of the Defendant for the calendar years of 2012 and 2013.  A true and correct copy of the Payroll Review is attached hereto as ~~Exhibit 8~~Exhibit 9. The audit revealed that Defendant failed to make all required contributions to the SEIU Pension Fund based on the hours worked by its employees.  The Defendant owes $1,211.21 in unpaid contributions, $411.40 in interest through February 17, 2016, $60.55 in liquidated damages, $121.12 in PPA surcharges, and $266 in testing fees.  While the contributions remain unpaid, interest continues to accrue on these delinquent contributions at $0.33 per day from February 17, 2016 to the date of payment.  As a result of the filing of the lawsuit, Defendant now owes an additional $181.68 in liquidated damages under the Collection Policy. In total, as of February 17, 2016, the Defendant owes $2,070.29, but interest continues to accrue daily.

21. Prior to commencing this lawsuit, the SEIU Pension Fund contacted Defendant in an attempt to obtain the outstanding amounts due.  Defendant has failed, however, to make payment on the amounts due.  There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the SEIU Pension Fund and pay the unpaid contributions, PPA shortages, liquidated damages, interest, and testing fee due identified in the payroll audit of Defendant's self-reporting for the calendar years of 2012 and 2013 .

## **COUNT I**

22. Plaintiffs reallege and incorporate Paragraphs 1 thorough 20.

23. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1332(a)(3) and 1145.

24. Section 4 of SEIU Pension Fund's Trust Agreement and Section 5 of the Collections Policy provide that the SEIU Pension Fund may perform a payroll audit any contributing employer for the purpose of ensuring that such employer has remitted the appropriate amount of contributions to the SEIU Pension Fund.

25. Pursuant to the SEIU Pension Fund's payroll audit of the Defendant for calendar years 2012 and 2013, the Defendant owes $1,211.21 in unpaid contributions, $411.40 in interest through February 17, 2016, $242.24 in liquidated damages, $121.12 in PPA surcharges, and $266 in testing fees.

26. Under Section 502(g) of ERISA, Plaintiff is entitled to recover all costs of this action from Defendant, including reasonable attorneys' fees and court costs.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1. Declare that Defendant is delinquent in remitting owed contributions, interest, liquidated damages, PPA surcharges, and testing to the SEIU Pension Fund pursuant to the 2009 and 2013 CBAs and the SEIU Pension Fund's Trust Agreement and Collections Policy;

2. Order Defendant to pay the unpaid contributions, interest, liquidated damages, PPA surcharges, and testing fees identified in the payroll audit of calendar years 2012 and 2013, with additional interest accruing until the date of payment;

3. Enter judgment for Plaintiffs' attorneys' fees and costs, as required by the

Collections Policy, the Trust Agreement and Section 502(g) of ERISA;

4. Retain jurisdiction of this case pending compliance with its Orders; and,

5. Grant such relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Olga Metelitsa
Olga Metelitsa (D.C. Bar #1016248)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 Facsimile
ometelitsa@mooneygreen.com
*Counsel for the Plaintiffs*

Dated: February 24, 2016

## CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)

I hereby certify that on this 24th day of February, 2016, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, TESTING FEES, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220


                /s/ Olga Metelitsa
                Olga Metelitsa